**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Johnny Mateo VANCE, Defendant–Appellant.**

No. 94–10245.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1995.

Decided Aug. 7, 1995.

Howard Trapp, Howard Trapp Inc. (on the briefs), Agana, Guam; and Jan Rubinstein, Agana, Guam (argued), for defendant-appellant.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before: REINHARDT, THOMPSON, and KLEINFELD, Circuit Judges.

Opinion by Judge KLEINFELD.

Concurrence by Judge REINHARDT.

KLEINFELD, Circuit Judge:

The most substantial issue in this case is how much proof of acceptance of responsibility a district judge can require as a condition of granting the two level sentencing guidelines adjustment available under Guidelines section 3E1.1. Other sentencing issues and a border search issue are also raised.

## I. FACTS

Vance appeals his conviction under 21 U.S.C. § 952 for importing methamphetamine into the United States. He argues that evidence gained during the pat-down search conducted by customs officers should have been suppressed, that he should have been awarded a three-point downward adjustment for a timely acceptance of responsibility, and that the district court erroneously denied him the right to allocution at sentencing. We affirm in part and reverse and remand in part.

On October 30, 1993, Vance arrived in Guam on a flight from Honolulu, Hawaii. A customs officer, who met the plane, testified that Vance looked dazed and glassy eyed, and seemed to have difficulty understanding and responding to his questions. He thought that Vance might be on some kind of medication. Also, Vance's Hawaii trip was suspiciously short—an $800 airplane ticket for less than 24 hours on the ground in Hawaii, for what Vance claimed was a vacation. The customs officer asked Vance if he worked for an airline, which would take the expense out of the short vacation trip, but Vance replied that he did not. The customs officer therefore referred Vance for secondary inspection.

The secondary inspection customs officer testified similarly about Vance's glassy eyed appearance, disorientation, and trouble answering questions. He searched Vance's luggage and found his airline tickets, which showed that Vance had been in Hawaii for only one day. The customs officer asked Vance "How was your trip," and Vance replied "three days." The customs officer thought "that didn't seem like a vacation," so he asked Vance if he could pat him down, and Vance said "sure."

During the pat-down search, the customs officer noticed that Vance was wearing two sets of underwear. The officer testified that it was unusual to wear extra underwear "in this climate." The customs officer also discovered that Vance had a suspicious bulge in

his crotch area, so he told Vance to drop his trousers and pull down his underwear. Vance complied and two packets of methamphetamine fell out:

Officer: I asked him to just face the wall, put his hands up, pat-down, spread his legs, and then I start from the head, and working my way down to his waist area.

Attorney: What did you find?

Officer: At this time he was up against the wall, facing up against the wall, his legs was about four feet back from the wall, spread, and I was searching within his waist area. I pulled back the waist of his pants, I noticed he was wearing two underwears, so then I just kept that in mind, and since the individual is only wearing shorts, I couldn't do much more, so I just searched within the crotch area, that's when I noticed that he had a bulge down there.

Attorney: And did you investigate what the bulge was?

Officer: I did, I did so.

Attorney: And what was it?

Officer: Then I had the individual turn around and face me, I asked him to drop his pants, so he did so, and then I asked him to drop his underwear, where at that time those two packets of wrapped items fell, fell to the ground.

 \* \* \* \* \* \*

Attorney: In your experience, is it unusual for people in the climate of Hawaii to wear two layers of underwear?

Officer: I would believe so, yes.

Vance moved to suppress the packets of methamphetamine that he had had hidden in his underwear. The district court denied the motion. Vance then pleaded guilty, but reserved his right to appeal the denial of his motion to suppress, and to withdraw his plea if we reversed the denial.

## II. ANALYSIS

### 1. Suppression

Vance argues that evidence known to the customs agents did not rise to a level of suspicion high enough to justify the search. This is incorrect.

■ Vance was subjected to a border search when he entered Guam. In a border search, a person is subject to search of luggage, contents of pockets, and purse without any suspicion at all. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538, 105 S.Ct. 3304, 3308–09, 87 L.Ed.2d 381 (1985); *United States v. Palmer*, 575 F.2d 721, 723 (9th Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978). For this reason, the inquiries and the search of Vance's luggage, which turned up the airplane tickets for the suspiciously short trip, required no suspicion.

■ As the search becomes more intrusive, more suspicion is needed. The pat down required that Vance spread-eagle himself against a wall and have a stranger's hands touch his body. In a border search, a pat-down requires "minimal suspicion." *United States v. Des Jardins*, 747 F.2d 499, 504–05 (9th Cir.1984); *United States v. Couch*, 688 F.2d 599, 604 (9th Cir.1982). What the customs officers knew, before they patted Vance down, sufficed to establish the necessary "minimal suspicion." *Cf. United States v. Taylor*, 934 F.2d 218, 221 (9th Cir. 1991). They had observed that his trip was too short to make sense, he looked glassy eyed, and he talked and looked like someone on drugs.

■ Telling a person to drop his trousers and pull down his underwear is more intrusive than a pat-down search. The established standard for a strip search at a border is "real suspicion." *Des Jardins*, 747 F.2d at 505; *Couch*, 688 F.2d at 604. When the customs agent told Vance to pull down his pants, the evidence already known to the customs agent gave him the "real suspicion" required to justify that additional intrusion. In addition to the way he looked and talked, and the unusual brevity of his expensive "vacation" trip, the customs officer who told him to pull down his pants had observed that he was wearing two pairs of underwear under his short pants in the tropical climate, and had a suspicious bulge under his pants. Because this evidence was sufficient to justify the search, the district court did not err in denying the motion to suppress.

## 2. Sentencing

■ At sentencing, Vance requested the three level adjustment downward which is available to a defendant who pleads guilty early enough to save the government the time needed to prepare for trial. *See* U.S.S.G. § 3E1.1(a), (b)(2). The government agreed. But the district judge denied the adjustment on the ground that Vance had taken the case through a suppression hearing, had refused to talk to the probation officer, had refused to assist law enforcement authorities, had not fully admitted his guilt, and had shown insufficient evidence of contrition.

■ We reverse the denial of the adjustment. Vance's plea of guilty and admission of the elements of his offense were "significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 3. A defendant who pleads guilty is not entitled to the adjustment for acceptance of responsibility "as a matter of right," "great deference" is accorded to a district judge's determination, and we review for clear error the district court's determination that a defendant did not establish acceptance of responsibility. *United States v. McKinney*, 15 F.3d 849, 852 (9th Cir.1994). Nevertheless we are compelled to find that the district court clearly erred in this case, *United States v. Rutledge*, 28 F.3d 998, 1000 (9th Cir.1994), because of the absence of significant evidence that Vance did not accept responsibility.

Vance's attorney said that he had told Vance not to talk with the probation officer about the crime, and to admit the offense conduct only in court. The attorney gave Vance this advice because he was concerned that if he prevailed on appeal on the suppression issue, the bar to later use of the admissions made in open court provided by Federal Rule of Criminal Procedure 11(e)(6)(C), would not apply to admissions made to the probation officer. The probation officer reported that Vance's attorney said he would not let Vance discuss the offense conduct, but when the probation officer asked Vance how he felt about it, Vance "related that he is sorry and that he will never do it again." The district court took Vance's failure to speak with the probation officer into account when deciding whether or not to adjust the sentence for acceptance of responsibility.

■ We have held that the district court cannot consider the defendant's refusal to discuss the offense with the probation officer as evidence weighing against acceptance of responsibility. *United States v. LaPierre*, 998 F.2d 1460, 1468 (9th Cir.1993); *United States v. Watt*, 910 F.2d 587, 592 (9th Cir. 1990). A defendant's refusal to discuss the offense conduct with the probation officer may reduce the amount of evidence supporting the defendant's claim of acceptance, but that is not the same thing as treating the refusal as a factor weighing against him. In this case the judge thought counsel's advice to Vance not to speak to the probation officer for fear that the information might come out later, was erroneous. The judge thought disclosures to the probation officer might be suppressed under Federal Rule of Criminal Procedure 32, so he weighed the refusal against Vance. That is impermissible under *LaPierre* and *Watt.*

■ Likewise, the court erred in holding it against Vance that he moved to suppress evidence before pleading guilty. Such a motion is an assertion of a constitutional right, and as we held in *LaPierre*, exercise of a constitutional right cannot be held against a defendant for purposes of the adjustment, although it may reduce the amount of evidence in his favor. *LaPierre*, 998 F.2d at 1468. Timeliness affects both the first two points and the third, U.S.S.G. § 3E1.1, application note 6, but a plea sufficiently in advance of trial so that the government can avoid trial preparation and the court can allocate its resources efficiently is sufficiently timely for all three points. U.S.S.G. § 3E1.1(b)(2). The amount of preparation by a prosecutor, and the amount of court time which must be scheduled, are far greater for a trial than for a motion to suppress. The guidelines do not mean "motions" where they say "trial" at § 3E1.1(b)(2). *United States v. Kimple*, 27 F.3d 1409, 1414–15 (9th Cir.1994). Thus, it was incorrect to hold it against Vance that he filed a motion to suppress evidence before he pled guilty.

■ The court also should not have held Vance's refusal to cooperate with law enforcement authorities against him, on the acceptance of responsibility issue. *United States v. McKinney,* 15 F.3d 849, 854 (9th Cir.1994). Had Vance agreed to discuss the offense conduct with law enforcement authorities, and perhaps revealed and agreed to testify against his supplier, he might have earned a prosecutor's recommendation for a downward departure for "substantial assistance to authorities." U.S.S.G. § 5K1.1. That is not closely related to contrition, however. A cunning but not contrite defendant may buy his way out of trouble by providing evidence against someone else, and an entirely contrite defendant may out of fear, ignorance of information useful to the prosecutors, or other reason, fail to provide assistance.

■ The district court erred in holding, at sentencing, that Vance had not fully admitted his guilt. At his change of plea, Vance satisfied the judge that there was a sufficient factual basis for his plea of guilty. *See* Fed.R.Crim.P. 11(f). The colloquy was skeletal:

> Court: The essential elements of your offense are that you intentionally brought methamphetamine into the United States, and that you knew that the substance was methamphetamine or some other prohibited drug. Do you understand that?
>
> Vance: Yeah.
>
> Court: Now, given that this is a conditional plea, in the event that, that your— that the condition underlying your plea is not resolved in your favor, can you tell us what the facts are constituting the offense charged? And you may talk to your counsel on that.
>
> (Conferred with counsel.)
>
> Vance: That I came in on October 30th—
>
> Court: I'm sorry, say again?
>
> Vance: I came in October 30th and went through Custom, and they discovered the methamphetamine.
>
> * * * * * *
>
> Court: On you?

Vance: Yes.

The prosecutor added that Vance's appearance had attracted Customs' attention, they patted him down, and found 26.64 grams in his pants.

Despite accepting the plea, the court held at sentencing that this admission of offense conduct was insufficient to gain the adjustment for acceptance of responsibility:

> [T]he court finds that the defendant pled guilty and said he was sorry. He has not admitted to the offense conduct. In the transcript of the plea, you will note that he admitted that he came into Guam and that they found the stuff. Quote, "they found the stuff," unquote. This is not the equivalent of fully admitting the offense conduct; he has not even told this court that he himself imported the ice into Guam.

The district court was bound by its finding, in accord with Fed.R.Crim.P. 11(f), that the plea was "supported by an independent basis in fact containing each of the essential elements of the offense." The prosecutor had provided no evidence of any element not supported already by Vance's admissions. The finding at the time the plea was accepted therefore compels the inference that Vance had "truthfully admitt[ed] the conduct comprising the offense of conviction," for purposes of U.S.S.G. § 3E1.1, application note 3.

■ The analysis thus far leaves only lack of "contrition" as a possible ground for denying Vance the three level adjustment for timely acceptance of responsibility. In general usage, the word "contrition" means sincere remorse for wrongdoing, repentance for wrongdoing, penitence, American Heritage Dictionary of the English Language 319 (2d ed. 1985), or consciousness of guilt giving rise to humility and sorrow. Webster's Third New International Dictionary, Unabridged 496 (1986). The factual inquiry required by the guidelines does not require a penetrating judicial examination of the criminal's soul. There is no particular social purpose to be served by lenience toward those who cry more easily, or who have sufficient criminal experience to display sentiment at sentencing instead of restraining their emotions in public.

The guideline term for the quality worth a two level downward adjustment is "acceptance of responsibility."

### Acceptance of Responsibility

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1. The application notes provide for three pieces of evidence which are "significant evidence" to establish "acceptance of responsibility;" (1) plea of guilty before trial; (2) truthful admission of the elements of the offense; (3) truthful admission, or at least no false denial, of "relevant conduct:"

Entry of a *plea of guilty* prior to the commencement of trial combined with truthfully *admitting the conduct comprising the offense* of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (*see* Application Note 1(a)), will constitute *significant evidence* of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

U.S.S.G. § 3E1.1, Application Note 3 (emphasis added).

 When the Application Notes were initially drafted, the notes to § 3E1.1 said that "[a] guilty plea may provide *some evidence* of the defendant's acceptance of responsibility ..." U.S.S.G. Appendix C, Amendment 351 (1994). After three years of experience with the Guidelines, the Commission changed "some" to "significant," thereby increasing the force of such evidence. That means that these three pieces of evidence now have "significant" probative value for purposes of establishing "acceptance of responsibility." Insignificant evidence cannot outweigh a plea of guilty before trial, truthful admission of the elements of the offense, and absence of a false denial of technically relevant conduct.

Vance established "significant" evidence of acceptance of responsibility. As explained above, he pleaded guilty before trial, and he admitted the elements of the offense charged when he pleaded guilty. There was no "relevant conduct" issue in this case. Most of what the district court considered as evidence the other way could not, as we explain above, be weighed against Vance's "significant evidence." Our established proposition that taking advantage of a constitutional right cannot be weighed against a defendant for this purpose, but can reduce the evidence in his favor, is no mere verbal formula. It means that the motion to suppress and refusal to discuss the offense conduct with the probation officer are not evidence. Those facts, along with the defendant's failure to assist law enforcement efforts, have no probative value against the "significant evidence" which tends to prove acceptance of responsibility.

 The particular way in which a defendant pleads guilty may, in some circumstances, amount to evidence against "acceptance of responsibility." If the defendant admits the conduct yet continues to commit crimes, inconsistently with the inference that he or she has decided to conform to the law, then the continued criminal conduct supports an inference that the defendant has not accepted responsibility. *See e.g., United States v. Cooper,* 912 F.2d 344, 347 (9th Cir.1990).

If the defendant does not truthfully admit each element of the crime, and the independent basis in fact for the plea required by Rule 11(f) has to be supplied independently of defendant's admissions at the Rule 11 colloquy, then the adjustment may be undeserved. *See United States v. McLaurin*, 57 F.3d 823, 827–8 (9th Cir.1995). If the defendant lies about the offense conduct or "relevant" conduct, the lies are evidence which the district court can weigh against acceptance of responsibility. *United States v. Rutledge*, 28 F.3d 998 (9th Cir.1994). Also, a plea of guilty to a charge reduced by a plea bargain, without any expression of remorse at any time, may reflect "a clever bargain" rather than acceptance of responsibility. *United States v. Rosales*, 917 F.2d 1220 (9th Cir. 1990). The application notes provide a detailed guide to numerous other circumstances in which evidence weighs for or against acceptance or responsibility.

In the case at bar, the only evidence weighing against acceptance of responsibility was the defendant's use of the passive voice in describing his crime. He said the methamphetamine was found on him, instead of saying that he smuggled it in. That is something, but not much. If the judge thought that the defendant was using something like the passive exonerative form, "mistakes were made," to avoid admitting mens rea, then it was incumbent on the court to require that the mens rea element of the crime be established prior to finding that there was a substantial basis in fact containing each of the essential elements of the offense. Fed. R.Crim.P. 11(f). Where the context does not suggest denial of mens rea to the judge at the time the guilty plea is entered, however, it is inconsistent to treat it later at sentencing as though it did.

■ We have required the adjustment to be awarded where the defendant lied about non-relevant conduct and about his motive. *United States v. Gonzalez*, 16 F.3d 985 (9th Cir.1993). In the case at bar, there was no evidence that Vance lied about anything. Vance pleaded guilty to the charge, with no reduction and no deal, and expressed remorse. A defendant does not need a plea

bargain to get the adjustment. *Cf. United States v. Rosales*, 917 F.2d 1220, 1223 (9th Cir.1990). This was not skimpy evidence of acceptance of responsibility. The pretrial plea of guilty and truthful admission of all elements of the crime were "significant" evidence of acceptance or responsibility. Pleading guilty without a plea bargain was additional evidence of acceptance of responsibility. Because there was no significant evidence the other way, the finding that Vance had not accepted responsibility was clearly erroneous.

■ One purpose of the guidelines was to reduce disparity among sentences on pleas of guilty. William W. Wilkins, Jr., *Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departures: Policy Decisions in the promulgation of Federal Sentencing Guidelines*, 23 Wake Forest L.Rev. 181 (1988). The guidelines recognized that sentences have historically been reduced by fairly predictable percentages upon pretrial pleas of guilty, and came about as close as they could, without penalizing the exercise of constitutional rights, to codifying the percentage. Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 28–29 (1988); Andrew J. Kleinfeld, *The Sentencing Guidelines Promote Truth and Justice*, Federal Probation 16, 18 (December 1991).

A defendant need not make a deal, and need not engage in histrionic display, to get the reduction for pleading guilty. An analysis of "acceptance of responsibility," focusing on the objectively ascertainable evidence such as that designated in the application notes facilitates the reduction of sentencing disparity which the guidelines are intended to promote.

Upon remand, the district court is to grant Vance the three-point downward adjustment that is consistent with his timely plea of guilty and admission of the offense conduct. The district court will of course need to determine the appropriate sentence within the range provided for by the guidelines with

that adjustment.[1]

AFFIRMED in part and REVERSED and REMANDED in part.

REINHARDT, Circuit Judge, concurring specially.

Because I believe that the defendant was denied his right to allocution, I would not reach the issue of acceptance of responsibility. However, were I to do so, I would reach the same result as the majority. For that reason, I concur.

---

1. Vance also argues that the district court erred by denying him his right to allocution. We do not reach this issue, because Vance must be resentenced on remand.