**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roberto Escobar FLORES,**
**Defendant–Appellant.**

**No. 94–30328.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1996.

Decided Aug. 19, 1996.

Michael Filipovic, Federal Public Defender, Seattle, Washington, for defendant-appellant.

Douglas Belt Whalley, Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee.

Before: BROWNING and CANBY, Circuit Judges, and REA,* District Judge.

CANBY, Circuit Judge:

Defendant Roberto Escobar Flores, who pleaded guilty to two counts of maintaining and controlling a place for the purpose of manufacturing controlled substances in violation of 21 U.S.C. § 856, appeals his sentence of 51 months. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We conclude that the district court clearly erred by denying Flores a two-level downward adjustment for acceptance of responsibility and that it miscalculated his criminal history points. We vacate Flores' sentence and remand for resentencing in accordance with this opinion.

## I. ACCEPTANCE OF RESPONSIBILITY

### A. Factual Background

Flores pleaded guilty to two counts of a five-count indictment, and the government agreed to dismiss the other charges; Flores entered the plea two months after being indicted. At his presentence interview, Flores did not discuss the offense with the probation officer, but instead submitted a short statement a few weeks later, in June 1994, which said:

> I am very sorry for my previous mistakes and the crime that I committed in my earlier life.

> I have turned my life away from crime, and pray to God that I will never make these mistakes again.

The officer found this statement was "generic," inadequate, and not warranting a de-

---

* The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

crease in offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 (Nov. 1990) (If defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct," then his offense level is reduced by two).[1]

Later, in July 1994, Flores submitted to the probation officer a more detailed letter, which his defense counsel helped him compose, stating in part:

> I am very sorry that I committed these crimes.... When I committed these crimes I thought it was a way to make easy money. I now realize how stupid this was.... I feel bad for the harm I have caused others, for the stress on my children and for the trouble I have caused the government.
>
> . . .
>
> I know I must go to prison for this offense and I am prepared to do so. I committed these crimes, I knew I was committing a crime at the time, and I have only myself to blame for my present situation.

The officer found this statement more comprehensive, but untimely, and therefore still not warranting credit for acceptance of responsibility.

Flores also made a statement at the sentencing hearing expressing, among other things, his acceptance of responsibility. Flores and the district court judge had difficulties communicating with each other. Flores was at a disadvantage because he does not speak English well and has only a third-grade education. At the hearing, the following colloquy took place:

> FLORES: I am sorry for my crime. And because of lack of education I did not learn how to defend myself in making a decision what—how to guide my life....
>
> THE COURT: Mr. Flores, what do you mean when you say your lack of knowledge, of education, prevented you from defending yourself?

> FLORES: I always did not know until the last two years when to say yes and when to say no.... But now that I have ... seen my mistake, and seen the—what wrong I have done to myself and to my two boys and my little girl, I have realized that if I would have had education, I would prepare myself to just live one life, to serve my family, and not be confused like I was confused.
>
> THE COURT: Well, "defend yourself," that means defend yourself against person or persons?
>
> FLORES: No, defend myself because of my thoughts that—I did not have the ability to say, "This is mine. This is my job. I am secure."
>
> . . .
>
> I accept my mistake. I accept that I was wrong.... I accept that everything has been my fault.
>
> . . .
>
> THE COURT: I get the impression that when you say defend yourself, that you would do what you did before but you would do it differently.
>
> FLORES: No.... What I mean is I would never do a crime like that. Now I know how to avoid that and work without never believing that there is something else for me. The only life for me that I have realized is to work and be honest. That is what I mean by defend myself....
>
> . . .
>
> I know that I have done wrong, and I do not want to repeat ever to do wrong, commit another crime.

The government recommended a two-level reduction in Flores' offense level for acceptance of responsibility. The district court found, however, that Flores' statements failed to establish his acceptance of responsibility. The district court calculated the offense level at 18 (base offense level of 16 plus 2 for possession of a firearm) with no reduction of two levels for acceptance of responsibility.

---

**1.** The 1990 Guidelines Manual was applied in this case because application of the then-current version (1993) would have given rise to an *ex* *post facto* violation. *See* U.S.S.G. § 1B1.11(b) (Nov.1995).

## B. Analysis

Flores maintains that he is entitled to a two-level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 (Nov.1990). We conclude that he is correct. We review for clear error the district court's determination that Flores did not establish acceptance of responsibility. *United States v. Vance*, 62 F.3d 1152, 1157 (9th Cir.1995); *United States v. Rosales*, 917 F.2d 1220, 1222 (9th Cir.1990). Although the district court's determination is entitled to "great deference" on review, this is clearly a case where the district court erred. U.S.S.G. § 3E1.1, comment. (n. 5) (Nov.1990); *Vance*, 62 F.3d at 1157.

The Sentencing Guidelines provide a two-level reduction in offense level "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a) (Nov.1990). Three types of evidence are of particular significance when evaluating whether a defendant has accepted responsibility within the meaning of the Guidelines: (1) whether defendant pleaded guilty before trial, (2) whether defendant truthfully admitted the elements of the offense, and (3) whether defendant truthfully admitted involvement in any "related conduct." U.S.S.G. § 3E1.1 comment. (n. 3) (Nov.1990); *see also Vance*, 62 F.3d at 1159. The timeliness of defendant's manifestation of acceptance of responsibility is also of special importance. U.S.S.G. § 3E1.1 (n. 1(g)) (Nov.1990).

Neither the government nor the district court contended that Flores failed truthfully to admit his involvement in the offenses or any conduct related to those offenses. The district court was perhaps concerned that Flores showed a lack of contrition, *see Vance*, 62 F.3d at 1158, and the court was concerned with the timing of Flores' acceptance of responsibility, *see* U.S.S.G. § 3E1.1, comment. (n. 1(g)) (Nov.1990). On this record, however, we conclude that the district court clearly erred in finding that Flores did not show adequate contrition or timely acceptance of responsibility.

This case differs from the typical ones where we have upheld the district court's refusal to reduce the offense level for acceptance of responsibility. In *United States v. Johnson*, we upheld a finding that the defendant failed to establish acceptance of responsibility by merely sending a one paragraph letter to the judge nine days before the sentencing hearing. *U.S. v. Johnson*, 953 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 506 U.S. 879, 113 S.Ct. 226, 121 L.Ed.2d 163 (1992). We also noted that the defendant initially lied about his involvement in the crime. *Id.* at 1173. There is no such allegation here. In *Rosales*, we affirmed a finding that a guilty plea, by itself, did not demonstrate acceptance of responsibility when the defendant had not expressed any remorse for his conduct. *Rosales*, 917 F.2d at 1223. Here, there is more than just a guilty plea- Flores did express remorse on numerous occasions.

"The factual inquiry required by the guidelines does not require a penetrating judicial examination of the criminal's soul. There is no particular social purpose to be served by lenience toward those who cry more easily, or who have sufficient criminal experience to display sentiment at sentencing instead of restraining their emotions in public." *Vance*, 62 F.3d at 1158. Flores did all he could to express his acceptance of responsibility. His use of the word "defend" may have disturbed the district court, but Flores appears to use that word to refer to the way he fights the temptations of the criminal life. The district court clearly misperceived his meaning.

Flores' acceptance of responsibility was not only sufficiently contrite to require its recognition, it was also timely. Flores pleaded guilty only two months after the indictment, thereby saving the government the expense of preparing for trial. Indeed, the government recommended a two-level reduction for acceptance of responsibility. Further, the district court cannot consider Flores' refusal to talk to the probation officer as evidence of not accepting responsibility. *See Vance*, 62 F.3d at 1157.

We are unable to discern what more Flores could have done to demonstrate acceptance of responsibility. We conclude that

the district clearly erred by not adjusting Flores' offense level downward by two levels on that account.

## II. CALCULATION OF FLORES' CRIMINAL HISTORY CATEGORY

### A. Factual Background

The dispute over calculation of Flores' criminal history arises from the fact that sentences on two convictions were increased because of a single probation violation. The prescribed Guideline calculation of such sentences has changed in recent years. Because the 1990 Guidelines Manual was applied in Flores' case, we must decide whether a 1991 amendment is a clarifying change that should be applied retroactively to his case.

The dispute centers on three convictions that contributed to Flores' criminal history score: (1) a conviction on February 18, 1992 for menacing, with an original sentence of 30 days in jail and 2 years probation; (2) a conviction on June 5, 1992 for assault, with an original sentence of 14 days in jail and 2 years probation; and (3) a conviction on October 7, 1992 for assault and harassment, with a sentence of 180 days suspended and 3 years probation.

At the time of the third conviction, the convicting court also determined that the third crime violated probation conditions imposed in connection with the first two convictions. That court therefore revoked both sentences of probation. It then imposed an additional 60 days incarceration for the first conviction, and an additional 180 days for the second conviction, with the two revocation sentences to run concurrently.

The importance of the additional terms of incarceration arises from the fact that a crime carrying a sentence of more than 60 days (but less than 13 months) incarceration calls for 2 points of criminal history, while a crime involving less than 60 days incarceration calls for 1 point. U.S.S.G. § 4A1.1(b), (c) (Nov.1990). The district court here, in calculating Flores' criminal history, counted the above three convictions as follows:

(1) February 18, 1992 conviction: 30 days + 60 days for probation revocation; total exceeds 60 days — 2 points

(2) June 15, 1992 conviction: 14 days + 180 days for probation revocation; total exceeds 60 days — 2 points

(3) October 7, 1992 conviction: suspended sentence; total less than 60 days — 1 point

To this subtotal of 5 points were added 2 more points for two other convictions, which are not at issue, for a total of 7 points.

That total placed Flores in criminal history category IV. The guideline range for category IV and offense level 18 was 41–51 months; the district court sentenced Flores to 51 months.

### B. Analysis

■ The district court's interpretation of the Guidelines presents a question of law that we review de novo. *United States v. Kimple,* 27 F.3d 1409, 1412 (9th Cir.1994).

■ The district court calculated defendant's criminal history category following the 1990 Guidelines Manual. The 1990 Guidelines Manual must be applied in its entirety—the court cannot apply one section from one edition and another section from another edition. U.S.S.G. § 1B1.11(b)(2) (Nov.1995) (this section effective Nov. 1, 1992). If a court, as here, applies an earlier Guidelines Manual, however, subsequent amendments are given retroactive effect if they make clarifying rather than substantive changes. *Id.* The language of the applicable guideline section has not changed: "In the case of a prior revocation of probation ... add the original term of imprisonment to any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1) (Nov.1990); *see also* U.S.S.G. § 4A1.2(k)(1) (Nov.1995). In 1991, Application Note 11 interpreting this section was amended by the addition of another paragraph. The new paragraph in Application Note 11 states in part:

Where a revocation applies to multiple sentences, and such sentences are counted separately under § 4A1.2(a)(2), add the term of imprisonment imposed upon revo-

cation to the sentence that will result in the greatest increase in criminal history points.

U.S.S.G. § 4A1.2, comment. (n. 11) (Nov. 1995). This new paragraph was added to address "the counting of points in complex revocation cases." U.S.S.G., App. C, at 208 (amendment 381) (Nov.1991).

■ The effect of this application note would be to add the additional term of incarceration to only one of Flores' first two disputed convictions. It makes no difference which one, because in either case the increase in criminal history points for that crime would be 1 point. But because the revoked term would be added to only one conviction, the other conviction would carry only 1 point. Flores' criminal history category would then drop from Category IV to Category III.

Flores argues that the new paragraph of the application note is a clarifying rather than a substantive change, which should be given retroactive effect and applied to his case. The government argues that this application note contradicts the Guideline by stating that the new term of imprisonment is added to only one of the original sentences, and thus should be disregarded entirely. *See Stinson v. United States,* 508 U.S. 36, 37, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). At the least, the government contends, the amendment is a substantive change that should not be applied retroactively.

We have not had the opportunity to interpret Application Note 11 since it has been amended. We did construe the pre-amendment version of Note 11 in *United States v. Smith,* 905 F.2d 1296, 1303 (9th Cir.1990). There, we said that "all sentences based on one *conviction* are to be aggregated, while sentences based on different convictions should be computed separately. The fact that the sentences were to run concurrently has no legal effect here." *Id.* This pre-amendment approach would leave Flores' criminal history as the district court calculated it.

The Sixth Circuit has addressed the amendment to Note 11. In *United States v. Streat,* 22 F.3d 109 (6th Cir.1994), it held that under the new Note, a probation revocation sentence of one year "should be added to the sentence which results in 'the greatest increase in criminal history points.' In [defendant]'s case, the three sentences are all the same-one year, suspended-so the sentencing court can tack the probation revocation sentence to any one of them. The other two sentences ... remain unaffected." *Id.* at 111. *Streat* recognized that we rejected such an interpretation of section 4A1.2(k)(1) in *Smith,* but noted that this new paragraph in Note 11 was added after *Smith* was decided. *Streat,* 22 F.3d at 111. *Streat* states that "this amendment adds a new method for calculating sentences that simply is inconsistent with *Smith.*" *Streat,* 22 F.3d at 111 (internal quotation omitted).

We find *Streat* persuasive in its construction of the amended Application Note 11; indeed, the example presented in Note 11 virtually dictates *Streat*'s result. We also conclude that the amendment clarifies an application of the Guideline § 4A1.2(k) that was previously in doubt, rather than making a substantive change to that Guideline. Indeed, a substantive change would more likely take the form of an amendment to the Guideline itself rather than to an application note. In any event, the nature of the change leads us to conclude that it is a clarifying amendment. Accordingly, it is to be applied retroactively to Flores. U.S.S.G. § 1B1.11(b)(2) (Nov.1995); *see United States v. Garcia–Cruz,* 40 F.3d 986, 990 (9th Cir.1994).

■ As we explained earlier, application of the amended Note 11 results in Flores' criminal history point score being reduced from 7 to 6, and his Criminal History Category from IV to III. Flores' sentencing range, with a total offense level of 16 (which includes the two-point reduction for acceptance of responsibility) and criminal history category of III, would be 27–33 months. We vacate Flores' sentence and remand for resentencing in accordance with this opinion.

**SENTENCE VACATED; REMANDED FOR RESENTENCING.**