**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

MAR 29 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50444 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-00271-BEN-1 |
| v. | |
| SACRAMENTO DIAZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted February 6, 2018
Pasadena, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and PRATT,[**] District Judge.

Sacramento Diaz challenges his sentence for importation of

methamphetamine in violation of 21 U.S.C. § 952.

1. Diaz contends that he was entitled to a minor-role reduction. *See* U.S.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

Sentencing Guidelines Manual § 3B1.2. After this appeal was filed, we decided

*United States v. Diaz*, No. 16-50102, which involved application of § 3B1.2 to

similar facts. We remand to allow the district court to reconsider the application of

the factors outlined in § 3B1.2 to this case in light of *Diaz*.[1]

2. A defendant's decision not to speak with the probation office may not

be held against him at sentencing. *United States v. LaPierre*, 998 F.2d 1460, 1467

(9th Cir. 1993); *see also United States v. Vance*, 62 F.3d 1152, 1157 (9th Cir.

1995). However, when a defendant's silence has merely led to a dearth of

information such that the court lacks sufficient information to grant a defendant's

requested reduction, the defendant's rights are not violated. *See Vance*, 62 F.3d at

1157; *LaPierre*, 98 F.2d at 1468. On remand, the district court should make clear

how Diaz's decision not to speak to the probation office factors into its decision, in

accordance with our Fifth Amendment precedent. *See LaPierre*, 998 F.2d at 1468.

**VACATED AND REMANDED.**

---

[1] Because we remand for the district court to conduct its Sentencing Guidelines analysis anew, we need not decide whether the district court applied an incorrect sentencing methodology or improperly relegated the role of the Guidelines to secondary status at the prior sentencing. *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").

PRATT, J., concurring:

FILED

MAR 29 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I concur with the majority's conclusion that vacatur and remand are necessary to ensure the district court's proper consideration of § 3B1.2 in light of this Court's recent decision in *United States v. Diaz*, No. 16-50102. I further concur that clarification is needed regarding the district court's alleged reliance on Diaz's silence to make affirmative findings of fact. However, I write separately because I conclude the question of the district court's foundational misuse of the Guidelines at sentencing must also be resolved on this appeal.

Diaz claims the district court committed a foundational procedural error under *Gall v. United States*, 552 U.S. 38 (2007), which infected the legal propriety of the court's § 3B1.2 minor-role analysis by "relegat[ing the Guidelines determination] to a secondary, merely confirmatory" exercise. We review de novo the legal standard the district court set out and applied to Diaz's request for a minor-role reduction under U.S.S.G. § 3B1.2. *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir.), *cert. denied*, 138 S. Ct. 229 (2017).

Diaz asserts the district court's "general sentencing methodology" was contrary to proper procedure as defined by the Supreme Court, which resulted in the

1

district court's failure to "proper[ly] implement[]" U.S.S.G. § 3B1.2.[1] The Supreme

Court has set out the requisite sentencing procedure in *Gall*:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

552 U.S. at 49–50 (footnote and citations omitted); *see also United States v. Carty*,

520 F.3d 984, 990–92 (9th Cir. 2008).

---

[1] The Government suggests the district court's alleged error is beyond the scope of permissible review because the issue falls within Diaz's waiver of appeal in his plea agreement. However, the waiver of appeal contains an exception that expressly permits Diaz to appeal the denial of a minor-role reduction under U.S.S.G. § 3B1.2. Because the district court's error bears directly upon the legal analysis applied to Diaz's request for a minor-role reduction, the alleged error falls within the scope of the exception to his appeal waiver. *See Gasca-Ruiz*, 852 F.3d at 1170 (holding appellate review of a Guidelines determination requires de novo analysis of the applicable law).

The procedure described in *Gall* is intended to "ensur[e] that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Peugh v. United States*, 569 U.S. 530, 541 (2013); *see also Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting the Sentencing Commission's goal of reducing sentencing disparities requires uniform application of the Guidelines at the outset of each sentencing). To that end, "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh*, 569 at 541 (quoting *Gall*, 552 U.S. at 50 n.6); *see Carty*, 520 F.3d at 991 ("All sentencing proceedings are to begin by determining the applicable Guidelines range," which is "to be kept in mind throughout the process.").

The district court revealed it does not adhere to this procedure when sentencing convicted defendants as a matter of course. During the resentencing hearing, the district court described its analytic process and general application of Guidelines provisions as follows:

> What I do is, I sit down and I do a 3553(a) analysis. So I say to myself, okay, I've looked at the facts of the case. I've looked at the history of the defendant. I have looked at all of the 3553(a) factors, the need for deterrence, protection of the public, et c., other sentences that may be available to me. Can I give him or her longer supervised release, or perhaps a lesser custodial term, or vice versa. I look at those things.
>      And then I go through . . . the Guidelines, right. And if the Guidelines in the end don't matter—I mean, in the sense that we're fairly close, then so, right? But for me to say, well, I don't have enough information to decide whether or not I should [apply a Guidelines

3

provision[2]], but I'm going to impose a sentence that is within the range of whatever that would be, then we're just unnecessarily taking up time. It becomes a futile exercise.

The district court's representations of its general sentencing processes are in clear contravention of *Gall* and *Carty*. Further contrary to the law is the district court's suggestion that it is possible for "the Guidelines in the end [to not] matter . . . in the sense that [they are] fairly close" to a sentencing court's estimated sentence.

The district court's standard procedure has been rejected by the Supreme Court because it would permit a sentencing court to implicitly determine that its ultimate sentence is close enough to the Guidelines range with or without a requested reduction. A sentencing court would therefore be free to conclude—without so stating on the record—that granting or denying a requested reduction is not material to its sentence. This framework is plainly erroneous. *See Gall*, 552 U.S. at 51 (holding appellate courts "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range"); *United States v. Lee*, 725 F.3d 1159, 1165 (9th Cir. 2013)

---

[2] The district court here cited the safety-valve and acceptance-of-responsibility provisions, U.S.S.G. §§ 3E1.1 and 5C1.2, as examples; however, it is clear from the context of the remarks that the district court's exchange with defense counsel was in contemplation of whether it had "enough information to decide" to apply a minor-role reduction. The district court's description of its process in Guidelines determinations arose from its expression of skepticism that it had enough credible evidence to show that Diaz was "substantially less culpable than the average participant" for purposes of § 3B1.2.

(per curiam) (holding a district court "clearly err[s]" when it "employ[s] precisely the converse procedure to that which it was required to follow").

Even assuming the district court fairly applied its erroneously stated law to the facts of this case, the legal error is neither rectified nor absolved as a result. It does not matter whether the district court arrived at the correct Guidelines calculation or departed downward.[3] And it is not pertinent whether the district court did or did not warp the Guidelines to confirm a "preconceived sentence." Of course, the Supreme Court's requirement that the Guidelines be calculated at the outset of sentencing guards against manipulation of the Guidelines for such a purpose. *See Peugh*, 569 U.S. at 541–42 (noting the Guidelines calculation occurs at the outset of sentencing to serve as the "framework for sentencing" and to promote analytic uniformity throughout the courts). However, the district court's *Gall* error is not conditioned upon whether it erred for the purpose of engaging in such manipulation.

In *Gall*, the Supreme Court held, "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court . . . *must* first

---

[3] Regarding the district court's post-conviction rehabilitation departure under *Pepper*, the present case aptly demonstrates why reviewing courts must be especially careful in ensuring they do not forgive a sentencing court's legal errors merely because the sentencing court exercised its discretion to a defendant's benefit on some other ground. These rulings could unintentionally manifest as a subconscious incentive for sentencing courts to grant nominal variances or departures to improve the chances of their sentences being upheld on appeal. Such a system serves the interests of neither the Government nor criminal defendants.

ensure that the district court committed no significant procedural error . . . ." *Gall*, 552 U.S. at 49–51 (emphasis added). And in *Carty*, this Court held, as a general matter, "On appeal, we first consider whether the district court committed significant procedural error . . . ." *Carty*, 520 F.3d at 993; *see also United States v. Christensen*, 732 F.3d 1094, 1107 (9th Cir. 2013) (Tashima, J., dissenting) ("[W]e should not turn a blind eye when a district court distorts the sentencing process."). It is uniquely the province of this Court in its supervisory role over the district courts to ensure the procedural integrity of sentencing proceedings.

The district court's apparently ongoing contravention of the mandates in *Gall* and *Carty* constitutes legal error. Therefore, in addition to our other present causes for remand, the district court must ensure it conducts its resentencing consistent with *Gall* and *Carty*.