GOODWIN, Circuit Judge:
Richard Dean Pedrioli appeals his sentence under section 2M5.2 of the United States Sentencing Guidelines for the unlawful exportation of handguns. The district court departed from the Guideline Range on the basis of the volume of commerce involved in the crime and the fact that the handguns were allegedly intended to wage war. We understand the sentencing judge’s impatience with the statutory restrictions that displace the court’s discretion in sentencing, but we are again compelled to vacate the sentence and remand for resentencing in accordance with the Guidelines.
I.
Pedrioli was arrested for smuggling handguns into the Philippines. Bureau of Alcohol Tobacco and Firearms agents observed the defendant marking two large metal boxes with the international insignia for scuba gear. Inspection of the boxes revealed that each container was constructed with double walls and bottoms. Agents found 74 handguns concealed in the hidden compartments. Defendant subsequently admitted that he had been smuggling handguns into the Philippines for the past two years and that he had smuggled approximately 800 guns during that period.
Pedrioli pled guilty to attempting to export munitions to the Philippines without a license. See 22 U.S.C. § 2778; 22 C.F.R. § 127.2. While free on bail awaiting sentencing, Pedrioli made another shipment of 70 concealed handguns. These pistols were placed in large metal containers marked “auto parts.” Once the flight arrived in Manila, the boxes were x-rayed by Philippine customs agents. The x-ray revealed the weapons. Pedrioli was again charged with the unlawful export of munitions, see 22 U.S.C. § 2778, and again pled guilty.
The Pre-Sentencing Report (PSR) recognized that the “Guidelines do not address offenses which are closely related in illegal activity but result in separate criminal cases. When contacted, the Sentencing Commission recommended the separate cases be treated as separate counts of a single indictment.” The report acknowledged, however, that the district court retained the discretion to treat the cases as separate crimes and to impose separate Guideline sentences which could be run consecutively or concurrently.
The PSR adopted the Commission’s recommendation and treated the offenses as separate counts of the same indictment. Under U.S.S.G. § 2M5.2, each count had a base offense level of 14. The base level was enhanced by 3 because the second crime was committed while Pedrioli was released on bail. The fact that the defendant was being sentenced on a multiple count indictment resulted in an additional 2 point enhancement. Finally, after a 4 point enhancement for being an organizer of criminal activity and a 2 point reduction for accepting responsibility, the total offense level recommended by the PSR was 21. With no criminal history, the Guidelines recommend a range between 37 to 46 months.
At the initial sentencing hearing the court rejected the PSR’s recommendations and opted to treat the crimes as separate offenses, ordering the terms to be served consecutively. The court expressed its belief that the PSR’s method did not adequately punish the defendant for commit *459 ting a second and identical offense while on bail pending sentencing for the first.
Pedrioli appealed the sentence of consecutive terms. We vacated the sentence and remanded for resentencing. See United States v. Pedrioli, 931 F.2d 31, 33 (9th Cir.1991). While district courts retain the discretion to sentence defendants to consecutive terms, see United States v. Wills, 881 F.2d 823, 826 (9th Cir.1989), the “district courts must follow the usual departure procedures.” Pedrioli, 931 F.2d at 32. Specifically, the decision to sentence two consecutive terms must be based upon factors not adequately taken into account by the Guidelines.
We remand the case to the district court for resentencing, noting that some of the factors considered by the district court in giving consecutive sentences in this case might not be appropriate grounds for departure because they were already considered by the guidelines. For example, the fact that the second smuggling attempt was committed while appellant was on bail from the first was taken into account by the addition of three points to appellant’s offense level.
Id. at 33. Courts cannot “second-guess the Sentencing Commission” in the name of consecutive sentences. Id.
At the second sentencing hearing the district court sentenced Pedrioli on a different theory. Rather than treating the two offenses separately and justifying the decision to run the sentences consecutively, the court departed upward under the Guidelines because of the “extremity of the crime.” As a result of the departure, the defendant was sentenced to a term of 57 months, eleven months more than the high end of the applicable Guideline range.
II.
Pedrioli was sentenced under U.S.S.G. § 2M5.2, “Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License.” The relevant version of § 2M5.2 provides:
(a) Base Offense Level (Apply the greater)
(1) 22, if sophisticated weaponry was involved; or
(2) 14.
In justifying its decision to depart, the district court stated:
[I]t seems appropriate that with 800 firearms being designated for what is quite obvious the purpose of waging war is an extreme circumstance allowing the Court to add two points.
Pedrioli argues that neither the number of handguns involved (800) nor the alleged intended purpose (waging war) justify departure. The district court’s legal interpretation of the Guidelines is reviewed de novo. See United States v. Niven, 952 F.2d 289, 291 (9th Cir.1991). The district Court’s findings of fact are reviewed for clear error. See United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991) (en banc).
According to the Application Notes, “the volume of commerce involved” and the nature of the “security or foreign policy interest” at stake are factors to be considered both in determining the sentence within the applicable range and as a potential basis for departure if “present in an extreme form.” [1] Therefore, the issue is whether 800 handguns is a “large” number warranting a sentence at the high end of the Guideline range or an “extreme” number justifying departure from the range. Pedrioli argues that within the context of § 2M5.2, “Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License,” “volume of commerce in ‘extreme form’ logically refers to truckloads or shiploads or military *460 armaments, rather than a few hundred handguns.” The government contends that 800 weapons is more than a few hundred handguns, and that 800 handguns is an “extreme” amount.
Few courts have had occasion to interpret section 2M5.2. Most of the reported cases address what constitutes “sophisticated weaponry.” See United States v. Helmy, 951 F.2d 988, 994-96 (9th Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 2287, 119 L.Ed.2d 211 (1992); United States v. Nissen, 928 F.2d 690, 694 (5th Cir.1991); United States v. Fu Chin Chung, 931 F.2d 43, 46 (11th Cir.1991). Two cases have examined the propriety of upward departures under this provision. See United States v. Johnson, 952 F.2d 565, 583-85 (1st Cir.1991), cert. denied, — U.S. —, 113 S.Ct. 58, 121 L.Ed.2d 27 (1992); United States v. Tsai, 954 F.2d 155, 164-66, (3rd Cir.), cert. denied, — U.S. —, 113 S.Ct. 93, 121 L.Ed.2d 54 (1992).
In Johnson, the First Circuit affirmed the district court’s departure from the Guidelines for two defendants who were convicted of exporting highly sophisticated remote control bombing devices to Northern Ireland. The conduct in question was “terrorism, flat out” with the grave “potential for death of innocent people.” Id. at 583. In Tsai, the Third Circuit reversed the sentencing departure for defendants who were convicted of exporting components used in sidewinder missiles to Taiwan. See 954 F.2d at 164-66. The district court wrongly based departure on the speculative volume of commerce potentially contemplated by the parties. Moreover, the fact that U.S. foreign policy interests were at stake and the fact that the conduct was analogous to espionage were factors already taken into account by the Sentencing Guidelines. Id. at 166.
The present case is not directly analogous to either Tsai or Johnson. At issue are relatively low caliber handguns, not sidewinder missiles or sophisticated implements of terrorism. Half of the weapons Pedrioli attempted to smuggle were .25 caliber pistols. What constitutes an “extreme” number under § 2M5.2 will vary with the type of weapon involved. Three Tomahawk missiles are different from three armored vehicles, which in turn are different from three handguns. We reject Pedrioli’s assertion that nothing short of “truckloads or shiploads” would be extreme, but we do hold that within the context of section 2M5.2 and on the facts of this case departure due to the volume of weapons was not justified. Eight hundred handguns may warrant a sentence at the high end of the Guideline range, but they do not justify a departure from the Guidelines.
The district court’s finding that the intended use of the handguns was to wage war is a finding of fact subject to review for clear error. Lira-Barraza, 941 F.2d at 746. Whether the alleged purpose of waging war is a factor justifying departure under the guidelines is a question that is reviewed de novo. Id. The PSR suggests a purpose for the weapons entirely different from that found by the district court.
Pedrioli quickly learned that nothing occurs in the Philippines without certain gifts being traded for favors done. According to Pedrioli, gun clubs are a very popular hobby for the well-to-do in the Philippines. When Pedrioli sought favors of influential individuals, they requested that he bring ammunition for their firearms to the Philippines. This escalated into his smuggling an occasional gun. In 1987, he commenced smuggling guns routinely as his financial problems worsened in the United States.
This explanation is more consistent with the type of weapons being smuggled. Whether on a traditional battlefield or in a guerilla war, we are not persuaded that combatants “wage war” primarily with small caliber handguns.
We need not decide whether the district court’s findings were clearly erroneous, however, because the departure was based on a factor that is adequately reflected in the Guidelines. While § 2M5.2 does not explicitly speak in terms of “wag *461 ing war,” the Guidelines address the effect of the offense on the United States’ security and foreign policy interests. Section 2M5.2 covers the exportation of arras, munitions and military equipment. The fact that these implements of destruction might be used to wage war is hardly a consideration not contemplated by the Commission. Indeed, the sentencing structure assumes that the offense had a detrimental impact on U.S. security or foreign policy interests, making the absence of such an affect a basis for downward departure. See U.S.S.G. § 2M5.2, Application Note 1. The mere fact that the handguns were intended for a military purpose, even if factually correct, by itself cannot support departure under § 2M5.2. See Tsai, 954 F.2d at 166. The government does not argue, nor did the district court find that Pedrioli’s conduct constituted an “extreme” threat to U.S. security or foreign policy interests.
Appellant’s sentence is VACATED and the case is REMANDED for resentencing.

. Application Note 2 of the relevant section states:
In determining the sentence within the applicable guideline range, the court may consider the degree to which the violation threatened a security or foreign policy interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences. Where such factors are present in an extreme form, a departure from the guidelines may be warranted.
U.S.S.G. § 2M5.2, Application Note 2.